IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| QWEST CORPORATION,<br><br>Plaintiff,<br><br>vs.<br><br>UTAH TELECOMMUNICATIONS OPEN INFRASTRUCTURE AGENCY, an interlocal cooperative governmental agency; the CITY OF RIVERTON, a Utah municipal corporation; and TETRA TECH CONSTRUCTION SERVICES INC., a Colorado corporation,<br><br>Defendants. | ORDER RESOLVING MOTIONS TO COMPEL AND TO INTERVENE<br><br><br><br>Case No. 2:05-CV-00471 PGC |

      In this lawsuit, plaintiff Qwest Corporation claims that defendants are violating 47 U.S.C. § 253, the Federal Telecommunications Act, by offering telecommunications services at reduced prices thanks to UTOPIA's tax-exempt status. Qwest has filed a motion to compel UTOPIA to respond to its discovery requests. UTOPIA objects and has moved to strike Qwest's motion and for entry of a protective order. In support of its motion and objections, UTOPIA argues that this court lacks jurisdiction to grant Qwest's motion and that certain provisions of the Utah Code prevent dissemination of the material Qwest seeks.

      After carefully reviewing the parties' memoranda, the court GRANTS IN PART Qwest's

motion to compel. While UTOPIA correctly notes that the Tenth Circuit has held that § 253 does not create a private right of action, a private right is not a necessary prerequisite to seek injunctive relief from state regulation if the plaintiff claims that federal law preempts the state regulation.[1] Such a situation "presents a federal question which the federal courts have jurisdiction under 28 U.S.C. § 1331 to resolve."[2] Therefore, UTOPIA's subject matter jurisdiction argument is without merit.

Similarly, the Utah Code does not prevent this court from compelling production of the discovery Qwest seeks. Utah Code Ann. § 63-2-202(7) states that "[a] governmental entity shall disclose a record pursuant to the terms of a court order signed by a judge from a court of competent jurisdiction, provided that" certain conditions are met. The court has examined the relevant conditions listed in that section and finds that they all are met in this case and weigh in favor of disclosure.

One particular condition, listed in § 63-2-202(7)(c), requires the court to consider "and, where appropriate, limit[] the requester's use and further disclosure of the record in order to protect" privacy and confidentiality concerns. In this case, the court finds that the information Qwest seeks should be protected from further disclosure to the greatest extent possible because it concerns very sensitive pricing mechanisms and other trade secrets. Qwest has submitted a proposed protective order that it claims would provide that necessary protection. But rather than enter Qwest's proposed order, the court will allow UTOPIA to submit a proposed protective

---

[1] *Qwest Corp. v. Santa Fe*, 380 F.3d 1258, 1264 (10th Cir. 2004).

[2] *Id.*

order to the court within twenty (20) days of the date of this order that provides significant protection for these records. This may include an "attorney's eyes only" designation that would preclude the information from being available to Qwest or its employees. If UTOPIA does not provide the requested order within 20 days, the court may enter Qwest's proposed order.

## MOTION TO INTERVENE

The court will also resolve one additional matter related to the motions discussed above. One of UTOPIA's business partners, MSTAR.NET, LLC, has filed a motion to intervene "for the limited purpose of opposing Plaintiff Qwest Corporation's Motion to Compel" and joining "UTOPIA's Motion for Protective Order."[3] MSTAR seeks to intervene under both Rule 24(a) and 24(b) of the Federal Rules of Civil Procedure.

> [A]n applicant may intervene as of right if: (1) the application is "timely"; (2) "the applicant claims an interest relating to the property or transaction which is the subject of the action"; (3) the applicant's interest "may as a practical matter" be impair[ed] or impede[d]"; and (4) "the applicant's interest is [not] adequately represented by existing parties."[4]

In reviewing MSTAR's memorandum in support, the court finds that it easily satisfies the first three requirements of this test. The fourth is somewhat closer, because UTOPIA has opposed (and continues to oppose) Qwest's efforts to obtain the pricing information; from MSTAR's memo, the court sees virtually no difference between UTOPIA's interest and MSTAR's interest in avoiding disclosure. Since the fourth element, however, imposes a "minimal" burden,[5] the

---

[3] Docket No. 84, at 1–2.

[4] *Utah Ass'n of Counties v. Clinton*, 255 F.3d 1246, 1249 (10th Cir.2001).

[5] *Utahs for Better Transp. v. United States Dep't of Transp.*, 295 F.3d 1111, 1117 (10th Cir. 2001).

court finds that it is met. The court therefore grants MSTAR's motion to intervene.

But even though MSTAR has intervened as of right, the arguments it presents do not change the court's ruling on the ultimate issue: whether Qwest is entitled to have UTOPIA respond to its discovery requests. MSTAR claims that disclosing its pricing information to Qwest "would result in a significant competitive benefit to Qwest, and a substantial detriment to MSTAR's business."[6] It alleges that Qwest has undercut MSTAR's DSL offering "by slashing prices below even the wholesale rate, and has even informed customers that MSTAR's services are not longer available. As a direct result, MSTAR's DSL business is no longer, or soon will not be, viable."[7] MSTAR claims that "[i]f Qwest had similar information relating to the Pricing, Qwest could undercut MSTAR in the fiber communications market with the same result."[8]

The court is not interested in facilitating disclosures that might lead to a business's demise. That, in fact, is the precise reason the court has recommended that the parties incorporate an "attorney's eyes only" designation into a protective order. This would enable Qwest's attorneys to gain access to the information for use only in this litigation and forbid disclosure directly to Qwest or others who may realize some competitive advantage by obtaining it. The court is certain that attorneys are mindful of and will fulfill their professional obligations to comply with such an order. The court is also confident that the attorneys are mindful of the serious consequences they could face should they violate such an order and pass the information

---

[6] Docket No. 85, at 4.

[7] *Id.*

[8] *Id.*

to their clients.

To further assuage MSTAR's concerns, the court directs UTOPIA to collaborate with MSTAR on the form of the proposed protective order.

## CONCLUSION

The court GRANTS MSTAR's motion to intervene for a limited purpose [# 84] and DENIES UTOPIA's motion to strike [# 54].

The court also GRANTS IN PART Qwest's motion to compel [# 50]. The court orders UTOPIA to provide to Qwest the discovery sought in that motion but DENYS Qwest's motion to enter the protective order it proposed. Instead, UTOPIA and MSTAR shall submit to the court a proposed protective order within 20 days of this order. Once the protective order is entered, UTOPIA shall have thirty (30) days to produce the discovery materials sought in docket # 51. Thus, UTOPIA's motion to strike [# 54] is DENIED and its motion for protective order [# 74] is GRANTED IN PART because it will provide the terms of the protective order to the court.

SO ORDERED.

DATED this 2nd day of May, 2006.

BY THE COURT:

_____
Paul G. Cassell
United States District Judge