IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| QWEST CORPORATION,<br><br>      Plaintiff,<br><br>vs.<br><br>UTAH TELECOMMUNICATIONS OPEN INFRASTRUCTURE AGENCY, an interlocal cooperative governmental agency; the CITY OF RIVERTON, a Utah municipal corporation; and TETRA TECH CONSTRUCTION SERVICES INC., a Colorado corporation,<br><br>      Defendants. | ORDER GRANTING MOTION TO DISMISS UTOPIA'S COUNTERCLAIMS AND DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT<br><br><br><br>Case No. 2:05-CV-00471 PGC |

In this lawsuit, plaintiff Qwest Corporation claims that 47 U.S.C. § 253, the Federal Telecommunications Act ("FTA"), preempts Utah Code Ann. § 59-12-104(2) and Article XIII, § 3 of the Utah Constitution because they extend tax-exempt status to defendant UTOPIA and thereby allow UTOPIA to offer telecommunications services at low prices. Defendant UTOPIA has filed six counterclaims against Qwest. Five of these (numbers one through four and seven) relate to Qwest's alleged failure to give UTOPIA access to its essential telecommunications

infrastructure as the FTA and Utah's Public Telecommunications Law ("PTL") require.  The remaining counterclaim (number six) is a tort claim for alleged interference with economic relations.

Qwest has moved to dismiss UTOPIA's five statutory counterclaims (numbered one through four and seven) that involve access to its infrastructure.  It raises two separate arguments in favor of dismissal: first, that UTOPIA fails to state a claim upon which relief may be granted; and second, that this court lacks subject matter jurisdiction over these causes of action.  The court will address Qwest's subject matter jurisdiction arguments before its Rule 12(b)(6) arguments because a Rule 12(b)(6) "disposition is a decision on the merits"[1] that can be entered only by a court with subject matter jurisdiction.[2]

Qwest has also filed a motion for partial summary judgment as to its trespass claim.  The court will address this motion after resolving the motion to dismiss.

### I.     What Are UTOPIA's Causes of Action?

To determine whether it has subject matter jurisdiction, the court must first discern which statutes give rise to UTOPIA's counterclaims.  UTOPIA's first four counterclaims allege that Qwest's actions were "[c]ontrary to the provisions of the FTA" or "the provisions of the PTL"[3] without stating which specific provisions Qwest allegedly violated.  This court must therefore

---

[1] *Osborn v. Shillinger*, 861 F.2d 612, 617 (10th Cir. 1988) (citing *Baker v. Carr*, 369 U.S. 186, 200 (1962)).

[2] *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir. 2006) (citing *Frederiksen v. City of Lockport*, 384 F.3d 437, 438 (7th Cir. 2004)).

[3] Doc. No. 47, ¶¶ 22, 27, 32, 38.

determine the specific subsections of the FTA or PTL under which UTOPIA's causes of action arise.

Counterclaims one through four allege that UTOPIA, while constructing its network, "requested access to certain of Qwest's essential facilities" and that "Qwest failed to permit UTOPIA to have reasonable access to its essential facilities."[4] Based on this language, Qwest argues that UTOPIA's counterclaims arise under 47 U.S.C. § 224, the Pole Attachment Act ("PAA"). The PAA requires the FCC to "regulate the rates, terms, and conditions for pole attachments."[5] Access to poles appears to be a "term" or "condition" subject to FCC regulation under § 224(b); Qwest's argument thus appears to be correct.

But as Qwest further notes, one subsection of the PAA, 47 U.S.C. § 224(c), expressly provides for *state law* preemption — that is, when a state chooses to regulate "with respect to rates, terms, and conditions, or access to poles, ducts, conduits, and rights-of-way," the state's regulations preempt any equivalent FCC requirements.[6] Utah has certified to the FCC that it has enacted legislation and adopted regulations pursuant to § 224(c).[7] Contrary to the position asserted by UTOPIA, these regulations were in effect at all times relevant to this litigation. And as the Utah Supreme Court noted, the broad language of § 224(c) means that "any regulation of

---

[4]*See* Doc. No. 47, ¶¶ 21-22, 26-27, 31-32, 37-38.

[5]47 U.S.C. § 224(b).

[6]*Id.* § 224(c)(1).

[7]*States that Have Certified that They Regulate Pole Attachments*, 7 F.C.C.R. 1498, 1498 (1992); *see also Utah Cable Television Operators Ass'n v. Pub. Serv. Comm'n*, 656 P.2d 398, 402 (Utah 1982).

utility pole attachment contracts by a state, regardless of the nature or specificity of such regulation, negates FCC jurisdiction over contracts in that state by providing a state forum for complaints concerning such contracts."[8]  As such, Utah regulations — not FCC regulations — govern disputes "with respect to rates, terms, and conditions, or access to poles, ducts, conduits, and rights-of-way," even though some pre-2006 Utah regulations specifically mention only pole attachments by cable television companies.

In opposition, UTOPIA argues that its counterclaims are "not based specifically on § 224 but upon the Federal Telecommunications Act as a whole."[9]  UTOPIA cites no case law in support of this proposition — that a private party may enforce "the entire FTA" or that the FTA "as a whole" creates an implied right of action.  Rather, UTOPIA cites 47 U.S.C. §§ 206–07 and 251, and claims that these sections, read in light of § 224, create private rights of action.

The court cannot accept UTOPIA's argument. The few cases the court found that deal with this issue hold that § 251 does not create a private right of action.[10]  Most courts to address the issue have also held that § 207 does not create a private right of action for violations of the

---

[8] *Utah Cable Television Operators Ass'n*, 656 P.2d at 400.

[9] Doc. 81, at 6 n.4.

[10] *AT&T Communications of Cal., Inc. v. Pacific Bell*, 60 F. Supp. 2d 997, 1002 (N.D. Cal. 1999).

Telecommunications Act of 1996.[11]  In short, the great weight of authority demonstrates that there is no private right of action for violations of the 1996 Act.

Accordingly, the court agrees with Qwest and holds that UTOPIA's first four counterclaims are pole attachment claims that arise under the PTL — the preemptive provisions of Utah law.

### II.  Does This Court Have Subject Matter Jurisdiction over UTOPIA's First Four Counterclaims?

Now that court has determined UTOPIA's first four counterclaims arise under the PTL, the court must next address whether it has subject matter jurisdiction to hear them.  The court holds that it does not have jurisdiction.

Under the PTL, "a dispute over interconnection of essential facilities . . . or the planning or provisioning of facilities or unbundled elements" should be brought "to the [Utah Public Service] commission, and the commission, by order, shall resolve the dispute on an expedited basis."[12]  Utah law requires parties to "'exhaust applicable administrative remedies as a prerequisite to seeking judicial review.'"[13]  There is no dispute that UTOPIA filed its counterclaims without first seeking redress from the PSC as Utah Code Ann. § 54-8b-2.2(1)(e)

---

[11]*See Intermedia Communications, Inc. v. Bellsouth Telecommunications, Inc.*, 173 F. Supp. 2d 1282, 1287 (M.D. Fla. 2000); *see also Global Naps, Inc. v. Bell Atlantic-New Jersey, Inc.*, 287 F. Supp. 2d 532, 544 n.17 (D.N.J. 2003) (citing cases).  But see *Conboy v. AT&T Corp.*, 84 F. Supp. 2d 492, 500 (S.D.N.Y. 2000) (finding that a private right of action exists based on "Sections 206 and 207 of the Telecommunications Act for damages suffered as a result of a violation of the Act").

[12]Utah Code Ann. § 54-8b-2.2(1)(e).

[13]*Housing Auth. v. Snyder*, 44 P.3d 724, 727 (Utah 2002) (quoting *Nebeker v. Utah State Tax Comm'n*, 34 P.3d 180, 184 (Utah 2001)).

provides. Because "this precondition to suit" was not satisfied, this court "lack[s] subject matter jurisdiction."[14]

UTOPIA argues that it need not exhaust its administrative remedies. It claims that the PSC lacks jurisdiction over it because UTOPIA is a municipal corporation. This argument is not well founded. The issue is whether the PSC has jurisdiction over *Qwest* so that it may adjudicate any grievances *against Qwest*. During the hearing on this motion, all parties admitted that the PSC has such jurisdiction; a plain reading of the PSC's jurisdictional statute, Utah Code Ann. § 54-4-1, shows that admission was correct. UTOPIA has not pointed to any statute that would exempt it from the requirement of submitting its disputes with Qwest — a party over whom the PSC has jurisdiction — to that administrative body.

Whether the PSC has jurisdiction to adjudicate Qwest-initiated proceedings against UTOPIA is another question that the court need not reach. The plain language of Utah Code Ann. § 54-8b-2.2(1)(e) requires UTOPIA, "one . . . of the disputing parties" in this interconnection melee, to "bring the dispute" against Qwest "to the commission" so that "the commission, by order," may "resolve the dispute on an expedited basis."

UTOPIA also appears to argue that the PSC lacks jurisdiction over it as a *complaining party* because it is a municipal corporation. This argument is based on the so-called "ripper clause" of the Utah Constitution, which provides: "The legislature shall not delegate to any

---

[14]*Id.*

-6-

special commission . . . any power to make, supervise or interfere with any municipal improvement, money, property or effects . . . or to perform any municipal function."[15]

On its face, this clause does not appear to apply here. If UTOPIA were to initiate proceedings against Qwest before the PSC for Qwest's failure to provide access to facilities, the commission's decision would not be "interfer[ing] with any municipal improvement, money, property or effects," but with *Qwest's* "improvements, money, property, or effects."

If this clause does apply, however, two elements must be met before it would deprive the PSC of jurisdiction over UTOPIA as a complaining party: first, the PSC must be a "special commission"; and second, UTOPIA must be performing a "municipal function." The Utah Supreme Court has held that the PSC is a special commission for Ripper Clause purposes,[16] thus satisfying the first element. But based on the 1990 Utah Supreme Court case of *Utah Associated Municipal Power Systems v. Public Service Commission*, UTOPIA cannot prove that it is performing a "municipal function."

In *UAMPS*, the Utah Supreme Court set forth this "balancing approach to decide whether any particular activity is a 'municipal function.'"[17] Courts must consider factors such as

> the relative abilities of the state an municipal governments to perform the function, the degree to which the performance of the function affects the interests of those beyond the boundaries of the municipality, and the extent to which the legislation under attack will intrude upon the ability of the people within the

---

[15]Utah Const. art. VI, § 28.

[16]*Utah Assoc. Mun. Power Sys. v. Pub. Serv. Comm'n*, 789 P.2d 298, 301 (Utah 1990).

[17]*Id.* at 302 (quotation marks omitted).

municipality to control through their elected officials the substantive policies that affect them uniquely.[18]

Based on these factors, the *UAMPS* court held that an effort by a consortium of municipalities to build a power transmission line was not a "municipal function."[19]  UAMPS was "a political subdivision of the state that combine[d] more than twenty cities, towns, and local agencies for the purpose of generating, buying, and selling electricity across the state."[20]  Its construction of a power line was "sufficiently infused with a state, as opposed to an exclusively local, interest to escape characterization as a municipal function."[21]  And "the very fact" that so many municipalities banded together to form UAMPS went "a long way to demonstrate that the function is one beyond the ability of any local government entity to perform effectively."[22]

The only real difference the court can see between the facts in *UAMPS* and those here is that UTOPIA is building a telecommunications network rather than a power transmission line. Otherwise, the discussion in *UAMPS* is applicable in all material respects to this case.  The court therefore holds that UTOPIA is not performing a "municipal function" within the meaning of article VI, § 28 of the Utah Constitution by constructing its telecommunications infrastructure. The "ripper clause" therefore does not preclude the PSC from exercising jurisdiction over UTOPIA, which must present its pole attachment claims to the PSC before bringing suit.  In light

---

[18]*Id.*

[19]*Id.*

[20]*Id.*

[21]*Id.* at 303 (brackets and quotation marks omitted).

[22]*Id.*

of this conclusion, the court need not reach any of Qwest's other arguments, including its argument that UTOPIA cannot claim sovereign immunity under the Utah Governmental Immunity Act.

### III. UTOPIA's Seventh Counterclaim Must Also Be Dismissed.

UTOPIA's final counterclaim (mislabeled number 7) alleges that Qwest breached an implied covenant of good faith and fair dealing. In full, this cause of action reads:

> 45. UTOPIA incorporates all preceding paragraphs herein.
> 46. Qwest is required to permit UTOPIA to have reasonable access to its essential facilities.
> 47. Such required access includes an implied covenant of good faith and fair dealing.
> 48. Contrary to the implied covenant of good faith and fair dealing, Qwest has not provided UTOPIA reasonable access to its essential facilities.
> 49. As a direct and proximate result of Qwest's conduct, UTOPIA has suffered an undetermined amount of damages which damages shall be proven at trial.[23]

In moving to dismiss this claim, Qwest argues that UTOPIA has not shown any contract that would create an implied duty of good faith and fair dealing. UTOPIA responded by stating that "[s]uch implied covenant obviously is a part of a contract and therefore the existence of such contract is implicit in the allegation."[24] While the existence of a contract may be implicit in its allegation, UTOPIA stops short of alleging the existence of an *explicit* contract that gives rise to the alleged duty. Instead, it claims that the FTA and PTL "granted statutory contract third-party beneficiary status upon UTOPIA because such legislative acts clearly intended to confer a

---

[23] Doc. No. 47, at 20.

[24] Doc. 81, at 12.

separate and distinct benefit on UTOPIA (47 U.S.C. § 251) and a means to enforce such benefit (47 U.S.C. § 206-207)."[25]

The court finds no precedential support for UTOPIA's claim. UTOPIA did not cite, and the court has not found, any case that says § 251 creates a "statutory contract" to which any interested party may claim a "third-party beneficiary" status. This is an especially difficult argument for UTOPIA to make because, as noted above, § 251 does not even create an implied private right of action.[26] UTOPIA's seventh counterclaim therefore should be dismissed.

One final question remains: should the dismissal be under Rule 12(b)(6) and therefore on the merits, or under Rule 12(b)(1) for lack of subject matter jurisdiction? Arguably, the court should dismiss for failure to state a claim because of the apparent lack of support for UTOPIA's position. But the language of this claim — alleging a failure to provide "reasonable access to [Qwest's] essential facilities" — is so related to conduct governed by Utah's PTL that the court holds it arises under the PTL just like UTOPIA's first four counterclaims. As such, this claim, like the others, must be adjudicated before the PSC, an entity better suited to determining whether Utah's regulatory scheme creates an "implied duty of good faith and fair dealing." The court therefore dismisses this claim for lack of subject matter jurisdiction.

---

[25]*Id.*

[26]*AT&T Communications of Cal., Inc. v. Pacific Bell*, 60 F. Supp. 2d 997, 1002 (N.D. Cal. 1999).

### IV.     Qwest's Fourth Cause of Action Will Be Dismissed Because of Qwest's Admissions.

In its reply memorandum in support of summary judgment, Qwest admitted that its fourth claim "is premised on UTOPIA's violation of state and local laws and applicable industry standards" and "invokes the expertise and ongoing regulatory function of the commission."[27] Qwest also "agree[d] that this claim should be dismissed."[28] The court therefore dismisses Qwest's fourth cause of action.

### V.     Disputed Issues of Material Fact Preclude the Entry of Partial Summary Judgment.

Qwest also has moved for summary judgment on its trespass claims. It alleges that UTOPIA has attached to Qwest's poles without permission and has removed Qwest's facilities from poles of unknown or disputed ownership. Qwest asks the court to find as a matter of law that UTOPIA trespassed; this finding, it claims, should facilitate settlement of its pending tort claims.

The standard governing summary judgment motions should be familiar. The court may only enter summary judgment when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, show that there is no genuine issue as to any material fact."[29] "'A fact is "material" if, under the governing law, it could have an effect on the

---

[27]Doc. # 111, at 4.

[28]*Id.*

[29]Fed. R. Civ. P. 56(c).

outcome of the lawsuit.'"[30]  This court must "view the evidence and draw all reasonable inferences therefrom in the light most favorable to the party opposing summary judgment."[31]

In this case, the court finds that UTOPIA (and Tetra Tech, its subcontractor) have presented evidence that creates a genuine issue of material fact as to who owned some of the poles at the time the alleged trespass occurred.  Since trespass requires proof of ownership,[32] disputed issues of fact on this point preclude summary judgment at this time.

## CONCLUSION

The court GRANTS Qwest's motion to dismiss (# 67) and DISMISSES UTOPIA's first through fourth and seventh counterclaims for lack of subject matter jurisdiction.  It also DISMISSES Qwest's fourth cause of action for the same reason.  These claims all relate to "pole attachments" and, under Utah's regulatory framework, must first be resolved by the PSC before they may be heard in court.

---

[30] *Terra Venture, Inc. v. JDN Real Estate Overland Park, L.P.*, 443 F.3d 1240, 1243 (10th Cir. 2006) (quoting *Sports Unlimited, Inc. v. Lankfor Enters., Inc.*, 275 F.3d 996, 999 (10th Cir. 2002)).

[31] *Id.* (quotation marks omitted).

[32] *See Walker Drug Co. v. La Sal Oil Co.*, 972 P.2d 1238, 1243 (Utah 1998) (citing *John Price Assoc., Inc. v. Utah State Conf., Bricklayers Locals Nos. 1, 2 & 6*, 615 P.2d 1210, 1214 (Utah 1980)).

And disputed issues of material fact require the court to DENY Qwest's motion for summary judgment (# 98).

SO ORDERED.

DATED this 18th day of July, 2006.

BY THE COURT:

_____
Paul G. Cassell
United States District Judge